UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ING Bank N.V.,<br><br>                         Plaintiff,<br><br>        -against-<br><br>M/V VOGE FIESTA, IMO No. 9168154, her<br>engines, tackle, equipment, furniture,<br>appurtenances, etc. *in rem*<br><br>                         Defendant. | 16-cv-2051 (KBF)<br><br>Admiralty |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING THE VALIDITY OF A MARITIME LIEN AND
ITS ASSIGNMENT TO ING BANK N.V. UNDER THE LAW OF ENGLAND**

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT ....................................................................................................... 1

I.    Based on the Admissible, Undisputed Material Facts, Summary Judgment Should be Entered in Favor of ING Bank. ................................................................ 1

II.    The Nature and Creation of Maritime Liens under United States Law. ........ 3

III.   It is Undisputed that OW Bunker Had a Maritime Lien against the VOGE FIESTA. ....................................................................................................... 4

IV.   Unsupported Allegations of Fraud or "Unclean Hands" Are Insufficient as a Matter of Law to Defeat the Maritime Lien of OW Bunker. ....................... 7

V.    OW Bunker Validly Assigned to ING Bank its Maritime Lien against the VOGE FIESTA. ....................................................................................................... 9

VI.   The VOGE FIESTA Has Failed to Comply with Fed. R. Civ. P. 56(d) to Warrant Discovery Prior to the Resolution of this Motion. ........................................ 14

CONCLUSION .................................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................ 15

## TABLE OF AUTHORITIES

**Jurisprudence**                                                            **Page**

*Aegean Bunkering (USA) LLC v. M/T AMAZON*,                                     5
No. 14-cv-9447 (KBF), 2016 WL 4471895 (S.D.N.Y. Aug. 24, 2016)

*The AMERICAN EAGLE*, 19 F. 879 (N.D. Ill. 1884)                               14

*Anderson v. Liberty Lobby, Inc.*,                                             2
477 U.S. 242, 248 (1986)

*Archie Comic Pubs., Inc. v. DeCarlo*,                                        3 & 4
258 F. Supp. 2d 315 (S.D.N.Y. 2003),
*aff'd*, 88 F. App'x 468 (2d Cir. 2004)

*Bank One, Louisiana N.A. v. M/V MR. DEAN*,                                     4
293 F.3d 830 (5th Cir. 2002)

*Barcliff, LLC v. M/V DEEP BLUE*,                                            5, 6, 7,
No. 1:14-cv-590 (S.D. Ala. Sept. 28, 2016) (ECF 93)                           10, 12,
                                                                                14

*The BOLD BUCCLEUGH*,                                                          4
7 Eng. Rep. 267, 284 (1851)

*Caparelli v. Proceeds of Freight*,                                           14
390 F. Supp. 1351 (S.D.N.Y. 1974)

*Direct Travel Insurance v McGeown*,                                          11
[2004] 1 All ER (Comm) 609

*Dresdner Bank AG v. M/V OLYMPIA VOYAGER*,                                     4
465 F.3d 1267 (11th Cir. 2006)

*Emigra Group, LLC v. Fragomen, del Ray, Bernsen & Loewy, L.L.P.*,           3, 4, 5
612 F. Supp. 2d 330 (S.D.N.Y. 2009)

*Galehead, Inv. V. M/V ANGLIA*,                                              6, 9
183 F.3d 1242 (11th Cir. 1999)

**Jurisprudence (cont.)**                                                                      **Page**

*The GOLDEN GATE KNUTSEN v. Associated Oil Co*.,                                                6, 9
52 F.2d 397 (9th Cir. 1931)

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)                                                  2, 3

*The JOHN G. STEVENS*,                                                                          3
170 U.S. 113 (1898)

*The KALFARLI*,                                                                                 8, 9
277 F. 391 (2d Cir. 1921)

*Lake Charles Stevedores, Inc. v. M/V PROFESSER VLADIMIR POPOV*,                                6, 9
199 F.3d 220, 233 (5th Cir. 1999)

*Larsen v. JBC Legal Grp., P.C*.,                                                               3, 4
533 F. Supp. 2d 290, 295 (E.D.N.Y. 2008) (Boyle, M.J.)

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*.,                                      2
475 U.S. 574 (1986)

*Nassar v. Madera*, 14-cv-8177 (KBF), 2016 WL 3945689, at *4 (S.D.N.Y. July 19,                 1 – 4
2016)

*The NEW IDEA*,                                                                                 14
60 F. 294 (S.D. Miss. 1892)

*Northwest Oil & Ref'g Co. v. Honolulu Oil Corp*.,                                              1
195 F. Supp. 281 (D. Mont. 1961)

*Odom v. Matteo*,                                                                               2
772 F. Supp. 2d 377 (D. Conn. 2011)

*O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA*,                                        5
No. 15–cv–2992 (SAS), 2016 WL 1544742 (S.D.N.Y. Apr. 8, 2016)

*Osaka Shoshen Kaisha v. Pacific Export Lumber Co*.,                                            3
260 U.S. 490 (1923)

*Outerbridge v. City of New York*,                                                              2, 8, 9
No. 13 Civ. 5459(AT)(DCF), 2015 WL 5813387 (S.D.N.Y. Sept. 30, 2015)

**Jurisprudence (cont.)**                                                      **Page**

*Pan Am. Bank of Miami v. Oil Screw DENISE*,                                      4
613 F.2d 599 (5th Cir. 1980)

*The PINAR DEL RIO*,                                                              3
16 F.2d 984 (2d Cir. 1927)

*Porter v. Quarantillo*,                                                         2
722 F.3d 94 (2d Cir. 2013)

*Portland Baseball Club, Inc. v. Kuhn*,                                          1
491 F.2d 1101 (9th Cir. 1974)

*The PRESIDENT ARTHUR*,                                                         14
25 F.2d 999 (S.D.N.Y. 1928)

*The ROCK ISLAND BRIDGE*,                                                        4
73 U.S. 213 (1867)

*The RUPERT CITY*,                                                              14
213 F. 263 (W.D. Wash. 1914)

*Seattle – First Nat'l Bank v. M/V LADY LYNNE*,                                  3
1995 A.M.C. 1748 (D. Alaska 1995)

*Sprint Communications Co., L.P. v. APCC Servs. Inc.*,                           1
554 U.S. 269, 128 S.Ct. 2531 (2008)

*Veverica v. Drill Barge BUCCANEER NO. 7*,                                      14
488 F.2d 880 (5th Cir. 1974)

*Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009)                                   2

*Zorn v. Mount Sinai Med. Ctr., Inc.*,                                          2, 8
2012 WL 4320575 (S.D.N.Y. 2012)

**<u>Statutes & Rules</u>**

Commercial Instrument and Federal Maritime Lien Act,                    5
46 U.S.C. § 31341

Commercial Instrument and Federal Maritime Lien Act,                    5
46 U.S.C. § 31342

Fed. R. Civ. P. 56(d)                                                3, 14

Fed. R. Civ. P. 10(c)                                                   14

**<u>Texts</u>**

Charles M. Davis, Maritime Law Deskbook 303 (1994)                      3

VOGE FIESTA - REPLY MEMORANDUM

ING Bank N.V., as Security Agent ("ING Bank"), submits this reply memorandum in support of its motion for partial summary judgment (ECF 48) concerning the validity of the maritime lien of O.W. Bunker & Trading A/S ("OW Bunker") against the M/V VOGE FIESTA for non – payment of bunkers as well as the validity of OW Bunker's assignment of that maritime lien to ING Bank.[1]  As concerns OW Bunker's maritime lien, the VOGE FIESTA interests have failed entirely to submit any admissible evidence that would create a disputed issue of material fact, and under applicable law, OW Bunker is entitled to a maritime lien against the VOGE FIESTA.  Moreover, under English law, it is clear that the English Omnibus Security Agreement, dated December 19, 2013, absolutely assigned to ING Bank all of OW Bunker's rights, title and interest in respect of fuel bunkers supplied by OW Bunker to the VOGE FIESTA, and the non-payment for those bunkers, including OW Bunker's *jus in re*, the maritime lien.

## I.      Based on the Admissible, Undisputed Material Facts, Summary Judgment Should be Entered in Favor of ING Bank.

In *Nassar v. Madera*, 14-cv-8177 (KBF), 2016 WL 3945689, at *4 (S.D.N.Y. July 19, 2016), this Court restated the standards and evidentiary burdens applicable to ING Bank's motion.

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 232 (1986).

---

[1]      As the assignee of OW Bunker of the maritime lien against the M/V VOGE FIESTA, ING Bank is the owner of the assigned claim and so is considered the real party in interest.  *Offshore Logistics Servs. Inc. v. Mutual Marine Office Inc.*, 462 F. Supp. 485, 494 (E.D. La. 1978), *appeal of subsequent order dismissed*, 639 F.2d 1168 (5th Cir. 1981).  Thus, ING Bank, in its capacity as the assignee for collection, has standing to file suit to collect on the assigned debt. *See Sprint Commc'ns Co., L.P. v. APCC Servs. Inc.*, 554 U.S. 269, 282 – 83 (2008).  Conversely, OW Bunker, as the assignor, may not bring suit itself provided the assignment was full and complete.  *Id*. (citing *Portland Baseball Club, Inc. v. Kuhn*, 491 F.2d 1101 (9th Cir. 1974)); *see also Northwest Oil & Ref'g Co. v. Honolulu Oil Corp.*, 195 F. Supp. 281, 287 (D. Mont. 1961).

Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment", as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts – *i.e.*, "facts that might affect the outcome of the suit under the governing law" – will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

*Id*. at *4 (emphasis added).

An unsworn expert report is inadmissible evidence for purposes of summary judgment. *See Zorn v. Mount Sinai Med. Ctr., Inc.*, 2012 WL 4320575 (S.D.N.Y. 2012). It is also "well-established that 'newspaper articles offered for the truth of the matters asserted therein are inadmissible hearsay that may not be considered by the Court in deciding a motion for summary judgment.'" *Outerbridge v. City of New York*, No. 13 Civ. 5459(AT)(DCF), 2015 WL 5813387 at *4 (S.D.N.Y. Sept. 30, 2015) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 404 (D.Conn. 2011).

In *Nassar*, this Court also discussed the non-movant's burden under Local Rule 56.1:

The Court notes that in opposing summary judgment, plaintiff makes a number of statements in response to defendants' Statements of Undisputed Fact that are simply conclusory denials. For example, he states that "Mr. Nassar disputes or has no knowledge as to whether the underwriting process used in issuing the Manulife Policy to Mr. Nassar followed the correct Manulife's underwriting procedures." These statements are not supported by any record evidence and do not properly raise triable issues. Local Rule 56.1 requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required

VOGE FIESTA - REPLY MEMORANDUM

> by Fed. R. Civ. P. 56(c)."   In many instances, plaintiff has not met that
> requirement.   *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (holding that
> speculation and conclusory denials cannot raise a triable issue).

*Nassar*, at *1 – *2, n. 2.

The non – movant's failure to cite to admissible evidence in a Rule 56.1 counter – statement requires those statements to be disregarded.  *Id*.; *Emigra Group, LLC v. Fragomen, del Ray, Bernsen & Loewy, L.L.P.*, 612 F. Supp. 2d 330, 348 (S.D.N.Y. 2009); *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 295 (E.D.N.Y. 2008) (Boyle, M.J.).  The inability to deny a given fact cannot create an issue of material fact in the absence of a Rule 56(d) affidavit that additional discovery is required. *Emigra*, 612 F. Supp. 2d at 348; *Archie Comic Pubs., Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 318 – 19 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 468 (2d Cir. 2004).

## II.    The Nature and Creation of Maritime Liens under United States Law.

The nature and creation of maritime liens under United States law reveal the legal error in the VOGE FIESTA's proffered defenses to ING Bank's motion.  A maritime lien is a "*jus in re*" or a right in a thing – the VOGE FIESTA.  *See Osaka Shoshen Kaisha v. Pacific Export Lumber Co*., 260 U.S. 490, 497 (1923); *The JOHN G. STEVENS*, 170 U.S. 113, 117 (1898); *The PINAR DEL RIO*, 16 F.2d 984, 986 (2d Cir. 1927).  A maritime lien is a "non – possessory property right of a non – owner in a vessel giving the lienholder the right in admiralty courts to have the property sold and the proceeds distributed to the lienholder to satisfy an *in rem* debt of the property." *Seattle – First Nat'l Bank v. M/V LADY LYNNE*, 1995 A.M.C. 1748, 1750 (D. Alaska 1995) (quoting Charles M. Davis, Maritime Law Deskbook 303 (1994)).

If the supplier of necessaries extended credit to the vessel, the maritime lien is an inchoate right that ripens into an enforceable claim upon the failure to pay the supplier.  "A maritime lien is the foundation of the proceeding *in rem*, a process to make perfect <u>a right</u>

inchoate from the moment the lien attaches[.]"  *The ROCK ISLAND BRIDGE*, 73 U.S. 213, 215 (1867) (quoting *The BOLD BUCCLEUGH*, 7 Eng. Rep. 267, 284 (1851)) (emphasis added).  The maritime lien for necessaries like the bunkers here arises when the claimant provides those necessaries.  *See Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1274 (11th Cir. 2006).  "The only thing necessary to create a maritime lien under the general maritime law or the statutes declaratory thereof is the rendition of the service to the vessel."  *Pan Am. Bank of Miami v. Oil Screw DENISE*, 613 F.2d 599, 602 (5th Cir. 1980) (citing 55 C.J.S. Maritime Liens § 30).  While the inchoate right of a maritime lien can only be enforced upon the vessel's breach, the maritime lien itself relates back to the date services or necessaries were provided to the vessel.  *E.g.*, *Bank One, Louisiana N.A. v. M/V MR. DEAN*, 293 F.3d 830, 834 (5th Cir. 2002); *United States v. HUAKAI*, 768 F. Supp. 2d 832, 845 (E.D. Va. 2011).  It is settled that a maritime lien is a "right" under the United States general maritime law.

## III.    It is Undisputed that OW Bunker Had a Maritime Lien against the VOGE FIESTA.

The first fifteen paragraphs in ING Bank's Rule 56.1 Statement set forth the material facts related to the maritime lien of OW Bunker against the VOGE FIESTA.  (ECF 50, pp. 1 – 4, paras. 1 – 15.)  The counter – statements set forth in VOGE FIESTA's Response do not contain any citations to evidence that would create a dispute as to any of ING Bank's statements. (Compare ECF 60, pp. 2 – 7, paras. 1 – 15.)  *See Nassar* at *1 - *2.  Several of the VOGE FIESTA's responses state "Defendant lacks information to admit or deny the facts",[2] which operate as an admission of those facts under the circumstances.  *Emigra*, 612 F. Supp. 2d at 348; *Archie Comic*, 258 F. Supp. 2d at 318 – 19; *Nassar* at *1 - *2, n. 2.  Other responses deny ING Bank's statement, but fail to provide any evidence in support of that conclusory denial,[3] in

---

[2]    See ECF 60, paras. 1, 8, 10, 11, &15.
[3]    *Id*., paras. 4 & 14.

contravention of Local Rule 56.1(c).  *Emigra*, 612 F. Supp. 2d at 348; *Larsen*, 533 F. Supp. 2d at 295.  The remaining responses either object to the statement as comprising in part what the VOGE FIESTA asserts is a legal conclusion and not a statement of fact[4] or admits the statement.[5]

In its opposition memorandum, the VOGE FIESTA concedes that 46 U.S.C. §§ 31341 – 42, the Commercial Instruments and Maritime Lien Act ("FMLA" or "CIMLA") provides the relevant law concerning OW Bunker's maritime lien against the vessel for non – payment of bunkers delivered to it on October 31, 2014.  (ECF 61, pp. 12 – 13.)  In order to establish its maritime lien by way of summary judgment, ING Bank must establish that there are no disputes as to the following material facts:  (1) OW Bunker provided necessaries, (2) to a vessel, (3) upon the order of the owner of a vessel or a person authorized by the owner.  46 U.S.C. § 31342(a); ECF 49, p. 11; *Barcliff, LLC v. M/V DEEP BLUE*, No. 1:14-cv-590 (S.D. Ala. Sept. 28, 2016) (ECF 93) at 18 (a copy of which is attached as Appendix A); *O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA*, 15–cv–2992 (SAS), 2016 WL 1544742 (S.D.N.Y. Apr. 8, 2016), *reconsideration denied*; *Aegean Bunkering (USA) LLC v. M/T AMAZON*, 14-cv-9447 (KBF), 2016 WL 4471895 (S.D.N.Y. Aug. 24, 2016).

The VOGE FIESTA does not dispute that it is a vessel or that bunkers are necessaries. The VOGE FIESTA admits that Primetransport Ltd., as charterer of the VOGE FIESTA, was authorized to purchase bunkers for the vessel.  (ECF 61, p. 13.)  Rather, the VOGE FIESTA argues that OW Bunker did not have a maritime lien because (1) OW Bunker did not physically supply the necessaries to it and (2) OW Bunker did not pay the physical supplier.  The settled law disposes of each argument.

---

[4]     *Id*., paras. 4, 5, 6, & 9.
[5]     *Id*., paras. 2, 3, 4, 5, 6, 7, 10, 12, 13, & 14.

VOGE FIESTA - REPLY MEMORANDUM

The VOGE FIESTA does not dispute that OW Bunker was contractually obligated to supply the bunkers to it by virtue of OW Bunker's Sales Order Confirmation. Moreover, it is uncontroverted that bunkers were delivered to the VOGE FIESTA on October 31, 2014. "A party need not be the physical supplier or deliverer to have 'provided' necessaries under" the FMLA. *Galehead, Inc. v. M/V ANGLIA*, 183 F.3d 1242, 1245 (11th Cir. 1999); *see also The GOLDEN GATE KNUTSEN v. Associated Oil Co*., 52 F.2d 397, 400 (9th Cir. 1931); *Lake Charles Stevedores, Inc. v. M/V PROFESSER VLADIMIR POPOV*, 199 F.3d 220, 233 (5th Cir. 1999). As the Ninth Circuit pointed out, "it is immaterial who made the delivery" as concerns the maritime lien of the party who contracted with the vessel interests to supply the fuel. *GOLDEN GATE KNUTSEN*, 52 F.2d at 400. Accordingly, the fact that OW Bunker did not physically supply the bunkers to the VOGE FIESTA is immaterial to OW Bunker's maritime lien, because OW Bunker provided the necessaries under the FMLA. *Galehead*, 183 F.3d at 1245; *GOLDEN GATE KNUTSEN*, 52 F.2d at 400; *Lake Charles Stevedores*, 199 F. 3d at 233.

Likewise, the VOGE FIESTA's invitation to restrict the validity of OW Bunker's maritime lien based on whether the physical supplier was paid ignores the time when OW Bunker's maritime lien arose. As discussed in § II *supra*, OW Bunker's maritime lien arose when the bunkers were delivered to the VOGE FIESTA, not when or whether the physical supplier was paid for them. *Id*. OW Bunker's ability to enforce its right of a maritime lien remains inchoate until either OW Bunker is paid (not when OW Bunker pays) or the expiration of the credit period.

In *DEEP BLUE*, the district court rejected this exact argument.

> This Court, however, cannot agree with the plaintiff's argument [the physical supplier] in this regard inasmuch as the general rule recognized in *Galehead*, *supra*, 183 F.3d 1245 ("[A] party need not be the physical supplier or deliverer to have 'provided' necessaries under the statute."), simply cannot be

> read as adding the requirement that a physical supplier be paid first before a contract supplier is entitled to a lien, *see id.* Indeed, the undersigned concludes that OW Bunkers UK would have a maritime lien because it took the order from Technip (the owner of the vessel) and necessaries (fuel bunkers) were furnished to the DEEP BLUE.

*DEEP BLUE* (App'x A) at 30 – 31.

Accordingly, on December 1, 2014, OW Bunker's inchoate right to a maritime lien against the VOGE FIESTA ripened into an enforceable claim.

## IV.     Unsupported Allegations of Fraud or "Unclean Hands" Are Insufficient as a Matter of Law to Defeat the Maritime Lien of OW Bunker.

As discussed *supra*, OW Bunker's maritime lien, a *jus in re*, against the VOGE FIESTA arose when the vessel was supplied with bunkers in accordance with the Sales Order Confirmation on October 31, 2014. OW Bunker's maritime lien remained an inchoate right until expiration of the payment terms on November 30, 2014. It was immaterial to the existence of OW Bunker's maritime lien whether someone else physically delivered the fuel. Likewise, it was immaterial whether OW Bunker paid the physical supplier prior to the exercise of the maritime lien rights.

Without citation to a single decision, the VOGE FIESTA asserts that OW Bunker somehow has "unclean hands", acted in bad faith, committed fraud, and was "reprehensible" and thus its otherwise valid maritime lien should be rejected regardless of the undisputed material facts set forth in Paragraphs 1 through 15 of ING Bank's 56.1 statement. (ECF 61, pp. 17 – 19.) The allegations are wholly unsupported in general and as concerns OW Bunker's supply of fuel to the VOGE FIESTA. Further, ING Bank had no knowledge of nor did it consent to any purported bad acts of OW Bunker. Most importantly, however, because fraud or unclean hands is not a defense to an otherwise enforceable maritime lien claim, the VOGE FIESTA's assertions are immaterial and thus should be rejected out of hand.

VOGE FIESTA - REPLY MEMORANDUM

In *The KALFARLI*, 277 F. 391, 396 (2d Cir. 1921), the Second Circuit rejected fraud as a defense to the maritime lien of a ship repairer.   There, the plaintiff / libelant, Anderson, misrepresented to the master of the KALFARLI that Anderson was an agent of Olsen – an established ship repairer – and thus Anderson received a contract to repair that vessel.   The KALFARLI objected to Anderson's invoice because it was exorbitant and included charges for work that was not performed.   The court declined to deny Anderson his maritime lien, stating that "the fraudulent conduct of a materialman does not extinguish his right to proceed in a common-law court *in personam*, and we are cited to no authority which shows that he loses his right to proceed in admiralty *in personam* or *in rem* to enforce his lien for work actually done or for supplies actually furnished." *Id*. at 397.   The court continued:

> That the libelant actually performed work for the ship and furnished her with certain materials cannot be denied.   For such work and for such supplies the maritime law gives a lien. We do not think that a court of admiralty can deprive him of that right on the ground that he claimed fraudulently to have done more work than he did, or charged fraudulently for the labor or supplies he in fact furnished.

*Id*.   Furthermore, "it is clear that the law gives him a lien on the ship, of which he cannot be deprived, even though the contract originated in deception, and the bill rendered is in some respects grossly inaccurate, and extortionate, if not actually in some respects fraudulent." *Id*. at 404.

In the instant case, there is no admissible evidence of unclean hands, fraud or deception, let alone wrongful acts with respect to the VOGE FIESTA bunker transaction, in which the ship received the fuel but has not paid its counterparty.   The report of Mr. Søren Halling – Overgaard is neither sworn nor authenticated by anyone with personal knowledge of its contents, and therefore is inadmissible hearsay. *Zorn*, 2012 WL 4320575 at *2.   The newspaper articles cited by the VOGE FIESTA likewise are inadmissible hearsay. *Outerbridge*, 2015 WL 5813387 at

*4; *Russell*, 696 F. Supp. 2d at 236.  Accordingly, there is no admissible evidence to support the VOGE FIESTA's nefarious allegations, and even if the report and articles were admissible, they in no way suggest any misconduct by ING Bank.[6]

Even if the VOGE FIESTA is successful in momentarily diverting the Court's attention to over 400 pages of documents that are clearly inadmissible, none of that information would create any issue of material fact as to the existence of OW Bunker's maritime lien against the VOGE FIESTA.  See *KALFARLI*, *supra*.  In contrast to the *KALFARLI*, there is no valid argument that OW Bunker overcharged for the bunkers and related services provided to the VOGE FIESTA.  The Sales Order Confirmation stated the price per volume of the bunkers, which were charged based on the volume actually supplied by OW Bunker to the VOGE FIESTA.  Moreover, OW Bunker's Terms and Conditions specifically provide that "Payment shall be made in full, without any set-off, counterclaim, deduction, and/or discount free of any charges to the bank account indicated by [OW Bunker]."  (ECF 50 - 1, p. 17 of 24, OW Bunker Terms and Conditions, p. 7, para. I(2).)  As stated *supra*, OW Bunker has a maritime lien because it contracted to supply the bunkers to the VOGE FIESTA, which contract was fulfilled on October 9, 2014.  *Galehead*, *GOLDEN GATE KNUTSEN*, *Lake Charles Stevedores*, *supra*.

## V.   **OW Bunker Validly Assigned to ING Bank its Maritime Lien against the VOGE FIESTA.**

As set forth in ING Bank's motion for partial summary judgment and the Declaration of Antony James Zacaroli, QC submitted therewith (ECF 50-3), the Security Agreement absolutely assigned to ING Bank all of OW Bunker's rights, title and interest in respect of the Supply

---

[6]     The VOGE FIESTA's contention that OW Bunker's bankruptcy does not extinguish claims by a physical supplier against its contractual counterparty (see Opp'n at 15), merely stands for the proposition that those claims can be asserted by the physical suppliers against OW Bunker entities in their respective bankruptcy proceedings.

Receivables, in accordance with well-established principles of English law.[7]  This includes OW

Bunker's *jus in re*, the maritime lien, against the VOGE FIESTA, and ING Bank now holds that

lien by virtue of such assignment.  Mr. Zacaroli's conclusion that the scope of the assignment

under the Security Agreement includes OW Bunker's maritime lien was found to be "inherently

reasonable" and adopted in full by the district court in *DEEP BLUE*:

> And while it is all too clear that the Security Agreement nowhere makes mention of "maritime liens," that is, it does not say maritime liens are assigned, it actually utilizes much broader language in assigning all "rights, title and interest in respect of the [New] Supply Receivables[,]" as explained by Mr. Zacaroli. This Court specifically agrees with the conclusion reached by Mr. Zacaroli that a maritime lien "is within the category of '*rights . . . in respect of* the [New] Supply Receivables and thus assigned to ING[]" … (emphasis in original)) and, in so concluding, adopts as its own the following statements/analysis of Mr. Zacaroli[.]

*DEEP BLUE* (App'x A), at 34 & 34 n. 51 (record citations and footnotes omitted).  The

statements in Mr. Zacaroli's declaration adopted by the district court in *DEEP BLUE* are the

same statements made by Mr. Zacaroli in paragraphs 18, 19 and 21 of his declaration in this

matter (ECF 50-3).  Significantly, the *DEEP BLUE* court also expressly rejected the same

contrary interpretation of the Security Agreement given by Mr. MacDonald Eggers that is

offered by the VOGE FIESTA in this case, finding that Mr. Eggers' analysis "fails to give due

consideration of the critical language of the clause, that is the words "*in respect of.*"  *DEEP*

*BLUE*, at 35 & n. 52 (emphasis in original).  Accordingly, in accordance with the persuasive

authority of the *DEEP BLUE* decision, OW Bunker's maritime lien against the VOGE FIESTA

was duly and absolutely assigned to, and is now held by ING Bank.

In support of its arguments that ING Bank was not assigned OW Bunker's maritime lien

rights, VOGE FIESTA offers the declarations of Mr. Hancock and Mr. Eggers, who, like Mr.

---

[7]     As explained at fn. 1 of Mr. Zacaroli's Supplemental Declaration submitted herewith ("Zacaroli Supp'l Decl."), the distinction between "New Supply Receivables" and "Supply Receivables" bears solely on the identity of the assigning entity and is of no moment in interpreting the scope of the assignment of these receivables.

Zacaroli, are both Queen's Counsel, that is, senior barristers.   (ECF 59 & 58-3.)   In his Supplemental Declaration submitted herewith, Mr. Zacaroli responds to the declarations of Messrs. Hancock and Eggers.   As noted by Mr. Zacaroli, all of the experts are broadly in agreement as to the applicable principles of construction under English law.   However, they disagree as to the application of those principles to the clauses of the Security Agreement at issue in the case.  (Zacaroli Supp'l Decl., para. 3.)

While Mr. Hancock's declaration addresses the rule of construction known as the *contra proferentem* principle, which holds that, in case of ambiguity, the contract should be construed against the drafter, neither Mr. Hancock nor Mr. Eggers opine that the language of Security Agreement is in fact ambiguous.  Instead, both Messrs. Hancock and Eggers devote the bulk of their declarations to arguing that the relevant words used in the Security Agreement – "all … rights, title and interest in respect of the New Supply Receivables" – should not be given their plain meaning and that instead the Court should construe the word "all" as used in this provision to not include the *jus in re* / right of maritime lien of OW Bunker under United States general maritime law.  According to the VOGE FIESTA, "all" is something less than "all" – an absurd interpretation in light of the language of the Security Agreement.

With regard to the doctrine of *contra proferentem*, Mr. Zacaroli cautions that this principle is considered a rule of last resort and opines that it is not applicable in this case.  As noted by Mr. Zacaroli, in *Direct Travel Insurance v McGeown* [2004] 1 All ER (Comm) 609, Lord Justice Auld explained the principle as follows:

> A court should be wary of starting its analysis by finding an ambiguity by reference to the words in question looked at on their own. And it should not, in any event, on such a finding, move straight to the *contra proferentem* rule without first looking at the context and, where appropriate, permissible aids to identifying the purpose of the commercial document of which the words form part. Too early

recourse to the *contra proferentem* rule runs the danger of "creating" an ambiguity where there is none.

Mr. Zacaroli concludes that since the meaning of clause 2.3(b) is clear and unambiguous, an English court, applying the ordinary principles of construction, would not need to resort to the *contra proferentem* principle at all in this case.  (Zacaroli Supp'l Decl., para.  4.)

Moreover, as Mr. Zacaroli explains, the parsed interpretation urged by VOGE FIESTA not only ignores the clear and unambiguous words used in the Security Agreement, but they also defy commercial and common sense.  The word "rights" "is used not (as Mr. Hancock suggests) in conjunction with 'in respect of a contract', but in conjunction with the phrase 'in respect of [New] Supply Receivables', i.e. in respect of an amount due.  As a matter of ordinary language, 'rights' in respect of an amount due has a broader meaning than just the contractual right to be paid."  (Zacaroli Supp'l Decl., para.  9(3).)  Furthermore, neither Mr. Hancock nor Mr. Eggers provide any support for their view that the words "rights" or "interests" should be limited in the manner they suggest.  Moreover, as discussed in § II *supra*, it is well settled as a matter of United States general maritime law that a maritime lien is in fact and law a "right."  Accordingly, a common sense reading of the plain language of the Security Agreement alone compels the conclusion that the assignment of "all rights, title and interest in respect of the New Supply Receivables" includes OW Bunker's maritime lien.

The absence of any express reference to the assignment of maritime liens also is of no moment because, as found by the district court in *DEEP BLUE*, the Security Agreement "actually utilizes much broader language in assigning all 'rights, title and interest in respect of [New] Supply Receivables.'" *DEEP BLUE*, at 34.  Similarly, Mr. Zacaroli states that since the phrase "rights and interest in respect of" the New Supply Receivables is intended to encompass rights such as security for payment of a New Supply Receivable, then there is no need to refer

expressly to maritime liens, or to any other security interest that might arise in respect of the New Supply Receivables. (Zacaroli Supp'l Decl., para. 14.)

Additionally, the stunted interpretation urged by VOGE FIESTA flouts the overall commercial purpose of the Security Agreement, namely, to grant as far as possible all rights held by the Chargors to ING Bank, and to provide the lenders with a broad grant of security:

> Stepping back from the points of detail made by Mr Hancock, the problem with his conclusion is that it makes little commercial sense. Leaving aside the disagreement between us as to the scope of the assignment in clause 2.3(a), it is common ground that it assigns at least the right to payment under each [New] Supply Receivable. The bank is therefore the party, as between the chargor and the bank, that is primarily interested in the recovery of the debt. A maritime lien arises for the sole purpose of providing security for payment of the debt. In circumstances where the bank, not the chargor, has the economic interest in the claim, it is difficult to see the common sense, or commercial purpose, in a right to security which arises specifically for the purpose of enforcing the claim being excluded from the rights transferred to the bank and remaining instead with the chargor.

(Zacaroli Supp'l Decl., para. 7.)

Simply put, ING Bank and the lender syndicate provided significant consideration in the form of the $700 million credit facility secured by the Security Agreement in exchange for the ability to assert *all* of OW Bunker's rights in respect of its outstanding invoices and the fuel supplies for which they were issued and, under the Security Agreement, OW Bunker expressly assigned all of those rights to ING Bank in clear, unambiguous and broad terms. Here, OW Bunker, having satisfied the requirements under FMLA, obtained a maritime lien arising from the supply of bunkers to the VOGE FIESTA. ING Bank, as assignee of those lien rights, is now entitled to enforce that maritime lien.

The Security Agreement expressly provides that it is to be governed by English law. (ECF 50 – 2, p. 41 of 116, Security Agreement, p. 27, art. 20.) There appears to be a dispute between VOGE FIESTA and ING Bank as to whether a maritime lien under the United States

general maritime law can be assigned.   However, it is settled that maritime liens are freely

assignable.  *Veverica v. Drill Barge BUCCANEER NO. 7*, 488 F.2d 880, 886 (5th Cir. 1974).

This Court, in *The PRESIDENT ARTHUR*, 25 F.2d 999 (S.D.N.Y. 1928), concluded that a

seaman could validly assign his claim for unpaid wages, and that "[t]he assignment of the claim

carries with it the lien as security for the debt, whether the lien be mentioned in the assignment

or not."  *Id*. at 1000 (emphasis added); *see also Caparelli v. Proceeds of Freight*, 390 F. Supp.

1351, 1356 (S.D.N.Y. 1974). Moreover, the courts have consistently rejected the argument that a

maritime lien is personal, and therefore cannot be assigned.  *The RUPERT CITY*, 213 F. 263, 266

(W.D. Wash. 1914) (citing cases).  Lastly, the assignment of a debt does not comprise a waiver

or divestiture of the maritime lien securing that debt.  *The NEW IDEA*, 60 F. 294 (S.D. Miss.

1892); *The AMERICAN EAGLE*, 19 F. 879 (N.D. Ill. 1884).   The foregoing United States

authorities parallel Mr. Zacaroli's opinions on English law concerning the assignment to ING

Bank of OW Bunker's right of a maritime lien against the VOGE FIESTA.  *See also DEEP*

*BLUE* at 34.

## VI.     The VOGE FIESTA Has Failed to Comply with Fed. R. Civ. P. 56(d) to Warrant Discovery Prior to the Resolution of this Motion.

The VOGE FIESTA interests have further argued, in the alternative, that this Court

should order discovery pursuant to Fed. R. Civ. P. 56(d) prior to resolving ING Bank's motion

for summary judgment. Pursuant to Fed. R. Civ. P. 10(c), ING Bank adopts and incorporates its

discussion in Section VI of the TEMARA Reply Memorandum concerning the procedural

deficiencies and improprieties of VOGE FIESTA's passing request in its opposition

memorandum for discovery prior to resolution of ING Bank's motion for partial summary

judgment.   Accordingly, the VOGE FIESTA's suggestion in the alternative that additional

discovery is required should be rejected out of hand.

## CONCLUSION

This Court should grant ING Bank's motion for partial summary judgment and conclude as a matter of law that OW Bunker has a valid maritime lien against the M/V VOGE FIESTA and that OW Bunker absolutely assigned that valid maritime to ING Bank.


Respectfully submitted:


*/s/ James D. Bercaw*
**JAMES D. BERCAW (*Pro hac vice*)**
**ROBERT J. STEFANI (*Pro hac vice*)**
**LAURA E. AVERY (*Pro hac vice*)**
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-3800
Facsimile:  (504) 582-1233
Email: jbercaw@kingkrebs.com
rstefani@kingkrebs.com
lavery@kingkrebs.com

**Attorneys for ING Bank N.V.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ James D. Bercaw*