UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

ING BANK N.V.,

                             Plaintiff,

                 -v-

M/V VOGE FIESTA et al.,

                         Defendants.

------------------------------------------------------------ X

ING BANK N.V.,

                             Plaintiff,

                 -v-

M/V OCEAN HARMONY et al.,

                         Defendants.

------------------------------------------------------------ X

ING BANK N.V.,

                             Plaintiff,

                 -v-

M/V MARITIME KING et al.,

                         Defendants.

------------------------------------------------------------ X

ING BANK N.V.,

                             Plaintiff,

                 -v-

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>October 20, 2016</u>

16-cv-2051 (KBF)

<u>MEMORANDUM
OPINION & ORDER</u>

16-cv-2923 (KBF)

<u>MEMORANDUM
OPINION & ORDER</u>

16-cv-3456 (KBF)

<u>MEMORANDUM
OPINION & ORDER</u>

16-cv-6453 (KBF)

|  | : | MEMORANDUM |
| M/V JAWOR et al., | : | OPINION & ORDER |
|  | : |  |
| Defendants | : |  |
|  | : |  |

-----------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Before the Court are a number of motions to reduce security filed by the vessel interests in the above-captioned matters.  (16-cv-2051 ECF No. 41; 16-cv-2923 ECF No. 54; 16-cv-3456 ECF No. 97; 16-cv-6453 ECF No. 32.)  On October 11, 2016, this Court held a hearing on these motions.  The Court has also received ING's letter of October 12, 2016, providing precise net fees for the arrest of each vessel.  In light of both equitable considerations and statutory commands, the Court concludes that the appropriate amount of security is the total of the following components for each vessel:

(1) 100% of the invoice amount;

(2) accrued annual interest of 3.5% on 100% of the invoice amount;[1] and

(3) 100% of costs, including (a) net non-refunded fees for the arrest of each

---

[1] The Court sets the accrued interest rate at the federal prime rate as of October 20, 2016.  Market Data Center, Wall. St. J., http://online.wsj.com/mdc/public/page/2_3020-moneyrate.html (last visited Oct. 20, 2016).  "The rate of interest to be applied is a matter within this Court's discretion[.]"  Great Lakes Bus. Trust v. M/T ORANGE SUN, 855 F. Supp. 2d 131, 2012 A.M.C. 1421, 1458-59 (S.D.N.Y. 2012) (collecting cases).  The Court observes that because interest rates have been at historical lows in the relevant time period, setting an interest rate at 6% as requested by ING at oral argument would be inappropriate.  Accrued interest is intended to ensure fair compensation, not windfall profit.  The U.S. CPI inflation rate has ranged between 1.6% and 2.3% in recent years.  Databases, Tables, & Calculators by Subject, U.S. Bureau of Labor Statistics, http://data.bls.gov/timeseries/CUUR0000SA0L1E?output_view=pct_12mths (last visited Oct. 20, 2016).  Therefore,

vessel as described in ING's letter of October 12, 2016; and (b) filing fees, which the Court understands to be a uniform $400 per vessel.

When a vessel is attached by an alleged supplier of necessaries in an <u>in rem</u> action and the parties cannot agree to stipulate a security amount, a court "shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs[.]" Fed. R. Civ. P. Admiralty Supp R. E(5)(a). "The historical purpose of maritime attachment is 'first, to gain jurisdiction over an absent defendant, and second, to assure satisfaction of a judgment.'" <u>Transportes Navieros Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V.</u>, 572 F.3d 96, 100 (2d Cir. 2009) (quoting <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 437 (2d Cir. 2006)). The Court "may, on motion and hearing, for good cause shown, reduce the amount of security given[.]" Fed. R. Civ. P. Admiralty Supp. R. E(6). In determining whether and how to reduce a security under Rule E(6), a court should weigh "the reasonableness of plaintiff's damages claim . . . and other equitable considerations." <u>Transportes</u>, 572 F.3d at 108.

In these cases the purpose of security is satisfaction of a possible judgment. Under longstanding precedent and practical realities, the amount of security set by this Court will place an effective cap on recovery in these actions. <u>See, e.g.</u>, <u>The</u>

---

setting accrued interest at the current prime rate of 3.5% will both account for inflation and reasonably protect against possible increases between the date of this opinion and the date of judgment on the underlying claims.

<u>Ann Caroline</u>, 69 U.S. (Wall) 538, 548-49 (1864) ("Obligation of a stipulator is the same as that of a surety, and consequently his liability is limited by the terms of his contract.  Whenever the obligation of the stipulator is for a definite sum named in the stipulation, the surety stipulating to pay that sum cannot be compelled to pay more than that amount.").  At oral argument, ING argued that this reality should guide the Court in consideration of these motions.  The Court has kept that point in mind.  The Court is also mindful that there is a competing interest by a vessel owner to free up (and allow current use of) funds held that are beyond appropriate security.  Maintaining a defendant's funds in a court registry—especially at a level set during the exigency of vessel arrest—can work a significant hardship.  <u>See Transportes</u>, 572 F.3d at 108-09 ("Absent district court discretion to . . . reduce the security based on a weighing of the equities . . . it would work inestimable hardship on the defendant if a plaintiff could obtain an attachment for any amount it claimed in damages . . . ." (internal quotation marks omitted)).  In exercising discretion to reduce security under Rule E(6), courts strive to strike this balance carefully and equitably.  Therefore, rather than reduce security by a proxy or rule of thumb,[2] the Court shall require an accounting of the statutorily permitted components of

---

[2] In its order of September 16, 2016, the Court indicated that it was strongly considering reducing the security amount to 106%, meaning 100% of the invoice amount plus 6% annual interest.  (16-cv-2051 ECF No. 62; 16-cv-2923 ECF No. 73; 16-cv-3456 ECF No. 122; 16-cv-6453 ECF No. 32.)  At the October 11, 2016, hearing ING argued that the 106% figure is a "rule of thumb" in this judicial district that may or may not comport with what the statute allows.  The Court is persuaded by this argument.  A proxy may be agreed to by the parties or imposed by a court, but when the amount is susceptible to further refinement, more precision may be appropriate.  It is appropriate here.

security to ensure that ING may recover its due under a favorable judgment (if any), while also preventing inequitable over-securitization.

To this end, the Court concludes that security should be set according to a calculation of each statutorily permitted component: (1) the "claim[s] fairly stated;" (2) "accrued interest" on the claims fairly stated; and (3) "costs." Fed. R. Civ. P. Admiralty Supp. R. E(5)(a). There is no disagreement among the parties that costs are limited to (a) the net fees paid by ING for the arrest of the vessels as reflected in ING's letter of October 12, 2016, and (b) filing fees; there is also no disagreement that accrued interest is limited to interest on claims fairly stated and therefore does not include interest on costs.[3] See Oct. 11, 2016, Hearing Trans. at 32-33, 38-39.

The parties disagree as to the calculation of "claim[s] fairly stated." Supp. R. E(5)(a). Defendants argue that claims fairly stated should include at most the invoice amount allegedly owed to O.W. Bunker under its contracts with the vessel charterers. ING argues that claims fairly stated may also include attorneys' fees and cites Barnett Bank, N.A. v. Tug Chauncey, 1999 WL 1044822 (M.D. Fla. July 14, 1999), for this proposition. The Court does not find ING's position persuasive. The Tug Chauncey arose in the context of a mortgage lien under 46 U.S.C. § 31325, not a maritime lien for the provision of necessaries under 46 U.S.C. § 31341. The purpose of a maritime lien, including that alleged by ING against the vessel interests, is to provide security for suppliers of "necessaries," i.e., "goods or services

---

[3] At the October 11, 2016, hearing defendants agreed to write a side letter providing that ING shall cover any de minimis recoverable costs such that these costs would not be included in any reduced security. Oct. 16, 2016 Hearing Trans. at 31.

that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." <u>Equilease Corp. v. M/V Sampson</u>, 793 F.2d 598, 603 (5th Cir. 1986), <u>cert. denied</u>, 479 U.S. 984 (1986).  "[A]ttorney's services . . . [do] not help [a ship] perform her function" and thus fall outside the scope of necessaries for which the statute authorizes the security of a maritime lien.  <u>Bradford Marine, Inc. v. M/V Sea Falcon</u>, 64 F.3d 585, 589 (11th Cir. 1995).  Therefore, "claim[s] fairly stated" are limited to 100% of the invoice amounts.

The parties are directed to provide to the Court an accounting of each component of the security amount and the total sum for each vessel no later than **Thursday, October 27, 2016**.

The Clerk of Court is directed to terminate the motions at 16-cv-2051 ECF No. 41; 16-cv-2923 ECF No. 54; 16-cv-3456 ECF No. 97; and 16-cv-6453 ECF No. 32.


SO ORDERED.

Dated:      New York, New York
            October 20, 2016


_____
        KATHERINE B. FORREST
        United States District Judge

6