# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

James H. Power
+1 212-513-3494
James.Power@hklaw.com


July 10, 2019

*Via ECF*

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

>      Re:     *ING Bank N.V. v. M/V Temara*, Case No. 16-cv-95 c/w
>              *ING Bank N.V. v. M/V Voge Fiesta*, Case No. 16-cv-2051

Dear Judge Stanton:

We represent the *in rem* defendant vessels M/V Temara and M/V Voge Fiesta (collectively, the "Vessel Defendants") in the above-captioned actions.  We write, together with ING Bank N.V. ("ING"), to update the Court on the status of these matters.

**Vessel Defendants' Position**

A status conference was last held on October 15, 2018, at which Your Honor authorized the parties to engage in limited discovery on the Vessel Defendants' affirmative defenses to ING's assertion of U.S. maritime liens, on the basis of alleged bad faith and fraud, namely, that either ING and/or ING's assignor O.W. Bunker & Trading A/S and affiliates including Dynamic Oil Trading (collectively "O.W. Bunker") knew at the time of contracting that it would not and could not make payment to its subcontractors for the fuel deliveries at issue.[1]

On December 7 and 10, 2018 the Vessel Defendants served discovery requests on ING in the form of interrogatories and requests for documents.  ING served its objections on January 7 and 9, 2019.  ING did not produce any documents or provide the names of any custodians of

---

[1] The Second Circuit did not decide, and the District Court did not reach in its decision in October 2016, whether despite meeting the statutory requirements of CIMLA, there is an underlying requirement that a maritime lien claimant have acted in "good faith" in contracting for the sale and delivery of fuel.  Indeed, Judge Forrest noted in her opinion that the legislative history suggests the Act was created to protect "good faith suppliers," however, Judge Forrest did not reach the factual issue of whether O.W. Bunker was a good faith supplier.  Accordingly, this Court ordered that discovery on the issue of whether ING and/or O.W. Bunker acted in "bad faith," i.e., whether they knew at the time of contracting that it could not and would not ever make payment to its subcontractor physical suppliers should proceed.

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Philadelphia | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

Hon. Louis L. Stanton
July 10, 2019
Page 2

records or other individuals who would be appropriate for deposition on the relevant discovery topics.  On January 22, 2019 the parties held a meet and confer telephone discussion where clarification on the documents and information sought and narrowing of the requests were agreed.

Following the meet and confer and the Court's entry of the agreed protective order, ING made a limited production on May 7, 2019.  This production included over 600 pages of publicly available information, much of which was obtained from the PricewaterhouseCoopers LLP website,[2] as well as certain documents related to the fuel transactions (which were not within the scope of any of the discovery requests and are irrelevant to the Vessel Defendants' affirmative defenses).  On May 8, 2019 undersigned counsel immediately requested a further meet and confer, advising that ING's production was completely deficient.  Specifically, the production included no emails or correspondence between ING and O.W. Bunker concerning the drawdown on the ING credit facility during the months leading up to O.W. Bunker's bankruptcy, and no internal documents at all obtained from O.W. Bunker such as board meeting minutes or reports.  ING has indicated via email dated May 22, 2019 that despite being the assignee of O.W. Bunker with respect to the claims asserted in these actions, it does not consider itself obligated to obtain documents from its assignor which are relevant to these disputes.  This is contrary to well-established caselaw.  *Blackrock Balanced Capital Portfolio (FI) v. HSBC Bank USA*, Case No. 14-cv-09366, at *3-4 (S.D.N.Y. Jun. 2, 2016) ("Assignees generally have a duty to obtain document discovery from assignors because 'it is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees" without also assigning "the obligations that go with litigating a claim.'  Otherwise, an assigned claim would be more valuable than an unassigned claim because discovery obligations 'would magically disappear.'  Because assignees sue 'in the shoes' of the original rights holder, 'there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations.'") (internal citations omitted).

The parties held an additional meet and confer on June 20, 2019 wherein counsel for ING represented that it continues to confer with ING regarding any further production to be made responsive to Defendants' requests.  During a follow-up call on July 8, 2019 ING was unable to represent that any progress had been made since the May 7 production, and could not state whether (and when) and documents in ING or its assignor's possession would be produced.

Based on the foregoing, pursuant to Local Civil Rule 37.2, the Vessel Defendants respectfully request a pre-motion discovery conference in advance of filing a Motion to Compel the requested documents and information.  Counsel has conferred with ING whose position is set forth below.

---

[2] PricewaterhouseCoopers LLC ("PwC") were appointed as joint receivers over the O.W. Bunker estate, and maintains various press releases on its website in connection with the bankruptcy estates.  Available at: https://www.pwc.co.uk/services/business-recovery/administrations/owbunker.html

Hon. Louis L. Stanton
July 10, 2019
Page 3

**ING's Position**

ING disputes the Vessel Defendants' characterization of the discovery process.  In fact, it is the Vessel Defendants who have consistently delayed the disposition of these matters by issuing overbroad and inappropriate discovery requests, ignoring ING's valid objections, and – rather than engaging in a productive meet and confer process – refusing to narrow its discovery requests and instead repeatedly threatening to move to compel production.

As this Court may recall, at the October 15, 2018 conference, the Vessel Defendants requested "very, very limited discovery into the issue of whether or not there was bad faith on the behalf of the O.W. entity 30 days prior" to the O.W. Bunker group's collapse in November 2014.  *See* Dkt. 211 at 17:10-13.  In particular, the Vessel Defendants sought to examine two discrete issues: (1) "[w]hether O.W. was insolvent at the time it was entering into these contracts" in the thirty days prior to its bankruptcy, and (2) "whether or not they knew that they had no money and they were entering into these contracts.  *And that's it*."  *Id*. at 17:21-18:1 (emphasis added).  *See also id*. at 17:20-21 ("So, there's 30 days of discovery – within a 30-day period of discovery, a couple of issues."); *id*. at 18:2-3 ("So it is a very limited period of discovery and a very limited focus.").

Contrary to that representation, however, in December 2018, the Vessel Defendants served on ING extensive discovery requests – thirty document requests and nine interrogatories for each matter – which far exceeded the scope and time period represented to the Court.  These requests included, among other things: (1) documents and communications concerning the finances, operations, and policies of numerous O.W. Bunker entities, dating well before the 30-day period preceding the bankruptcy, including some requests that sought materials dating back as far as 2013, or had no temporal limitation whatsoever; and (2) documents and communications concerning ING's decision to extend credit to the O.W. Bunker group, which has no bearing on the Vessel Defendants' allegation that the O.W. Bunker group entered into contracts in the month preceding its bankruptcy despite knowing of its imminent collapse.

ING timely served its objections and responses in January 2019.  In addition to objecting to the overbroad scope of the requests, ING noted that many of the requests sought materials that are in the possession, custody, and control of O.W. Bunker group entities and *not* ING, which does not have any control over those entities.  Although ING repeatedly recommended that the Vessel Defendants seek appropriate relief by third party discovery on O.W. entities, the Vessel Defendants have not, to ING's knowledge, taken any steps to utilize that avenue of discovery.

In addition, the Vessel Defendants' suggestion that ING has the right or practical ability to obtain "internal documents. . . from O.W. Bunker such as board meeting minutes or reports" is without basis, and it incorrectly suggests without basis that ING's assignment of rights in respect of receivables somehow came with the right to demand board meeting minutes or other internal documents from the estates of O.W. entities in insolvency proceedings around the world.  As part of its productions to the Vessel Defendants in this case, ING has already produced documents relating to the Supply Receivables at issue in this case, and only after concluding negotiations

Hon. Louis L. Stanton
July 10, 2019
Page 4

with the Trustees of applicable O.W. entities who would agree to produce those materials to ING. Notwithstanding those obstacles, those materials from O.W. entities are now in the Vessel Defendants' possession.

On January 22, 2019, the parties met and conferred regarding the Vessel Defendants' discovery requests. However, following this meet and confer, the Vessel Defendants refused to limit or narrow any of their requests. On February 11, 2019, ING notified the Vessel Defendants that it would not be revising its responses and objections, but would be making a production subject to the signing of a protective order. Although ING circulated a draft protective order on February 13 (which draft was substantially similar to those that counsel in these actions had agreed to in separate O.W. Bunker-related proceedings pending before Judge Caproni), the parties engaged in lengthy negotiations concerning that draft order, and final approval from the Vessel Defendants was not received until mid-April 2019. The protective order was submitted by the parties, and signed by this Court, on April 16.

On May 7, 2019, ING produced approximately 900 pages of documents to the Vessel Defendants.[3] On May 8, counsel for the Vessel Defendants threatened to move to compel the production of documents. On May 10, ING's counsel responded to the Vessel Defendants. ING's counsel reiterated ING's objections to the discovery requests, but nonetheless noted that it was conferring with its client on the requests and was willing to meet and confer "in order to identify what it is you believe you need prior to the filing of any motion to compel."

Over the next month, counsel for ING and the Vessel Defendants exchanged e-mails in an attempt to line up their schedules for a second meet and confer. The parties next spoke on June 20, 2019. At that time, ING explained that it was continuing to confer with its client about the Vessel Defendants' requests, which, in addition to being overbroad, raised complex issues of conflicting Dutch and EU data privacy law. ING proposed that the parties speak again on July 8 so that ING might provide an update on its progress.

On the July 8 call, ING's counsel informed the Vessel Defendants' counsel that it expected to receive additional documents for review from its client this week. Notwithstanding the progress report, the Vessel Defendants again threatened to move to compel and informed ING that the Vessel Defendants had spoken with the Court's clerk during the week of July 1 and

---

[3] Contrary to the Vessel Defendants' suggestion that these documents are "irrelevant to the Vessel Defendants' affirmative defenses," the documents reflect the absence of bad faith in that the fuel transaction proceeded in the ordinary course in October 2014 and that the fuel was provided to and consumed by the Vessel, but no payment has subsequently been made for the fuel that the Vessel received. Upon the completion of document discovery, ING intends to renew its motion for summary judgment and for dismissal of the Vessel Defendants' affirmative defense. Even though the Vessel Defendants' allegations have no merit, even if true they are not grounds to deny the statutory lien provided by CIMLA even if the allegations had any basis in fact. *See The Kalfarli*, 277 F. 391, 396-97 (2d Cir. 1921) ("the fraudulent conduct of a materialman does not extinguish his right to proceed in a common-law court in personam, and we are cited to no authority which shows that he loses his right to proceed in admiralty in personam or in rem *to enforce his lien for work actually done or for supplies actually furnished*.") (emphasis added). Here, because the supplies were actually furnished and consumed, the requirements of CIMLA are met, and the Vessel Defendants' nonpayment for the fuel that they received and benefitted from should be remedied.

Hon. Louis L. Stanton
July 10, 2019
Page 5

that the Court had requested an update on discovery and that the parties provide a joint status report.

As noted repeatedly to the Vessel Defendants, ING's discovery efforts have continued notwithstanding its responses and objections, and for that reason ING believes that a pre-motion discovery conference would be premature.  ING anticipates that its current discovery efforts, notwithstanding its objections, will be completed within approximately the next 60 days.

We thank the Court for its attention to this matter.

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ James H. Power*

James H. Power

Cc:     Via ECF
         All counsel of record